UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL COMMUNICATIONS HOLDINGS,<br><br>                              Plaintiff,<br><br>v.<br><br>TODD THREW; THE FIRM ADVISORS, LLC; JARED OLSON; COURTNEY SELLS; MAYKAYLA KALAGIAS; and DOES 1-10,<br><br>                              Defendants. | Case No.:  3:25-cv-01102-TWR (DEB)<br><br>**ORDER (1) GRANTING DEFENDANT TODD THREW'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS MAYKAYLA KALAGIAS, JARED OLSON, CORTNEY SELLS, AND THE FIRM ADVISORS, LLC'S MOTION TO DISMISS**<br><br>(ECF Nos. 34, 35) |

Presently before the Court are Defendant Todd Threw's Motion to Dismiss First Amended Complaint ("Threw MTD FAC," ECF No. 34) and Defendants Maykayla Kalagias, Jared Olson, Cortney Sells, and The Firm Advisors, LLC's ("TFA Defendants") Motion to Dismiss First Amended Complaint ("TFA MTD FAC," ECF No. 35), both of which are fully briefed.  (*See* ECF Nos. 38 ("Threw Opp'n"), 40 ("Threw Reply"), 37 ("TFA Opp'n"), 41 ("TFA Reply").)  The Court heard oral argument on the Motions on May 7, 2026. (ECF No. 42.)  Having carefully reviewed the Parties' arguments, the record,

1

and the law, the Court (1) **DENIES** TFA Defendants' Motion to Dismiss under 12(b)(2), (2) **GRANTS** TFA Defendants' Partial Motion to Dismiss under 12(b)(6), and (3) **GRANTS** Defendant Threw's Partial Motion to Dismiss under 12(b)(6).

# BACKGROUND

## I.      Factual Background

Michael Windsor ("Windsor") is the sole director and shareholder of Plaintiff Coastal Communication Holdings ("CCH"). (*See* ECF No. 33 ("FAC") ¶ 6.) Plaintiff alleges that Defendant Threw, the former owner of TJT Communications, Inc. (d/b/a Coastal Communications) ("TJTC") made various misrepresentations in connection with Plaintiff's purchase of TJTC's shares. (*See generally id.*) Plaintiff also alleges that the brokers of the sale, the TFA Defendants, participated in the misrepresentations in connection with the sale. (*See id.*)

The process of Windsor purchasing the TJTC shares began when he saw an advertisement leading him to a TFA website posting which stated, "*FOR SALE*: Site Planning and Survey Firm: Niche in Telecom with 21 on Staff" and listed facts about the business available for sale. (*Id.* ¶ 15 (citing "Summary," ECF No. 1-2, Exh. 1 (emphasis in original)).) The Summary also stated the following:

1. *A 10% down payment of $83,500 returns $143,115 in the first year <u>after</u> debt payments, which is a 171% return on investment!!*
2. They have built a tenured team of 21 employees[.]

(Summary at 1 (emphasis in original).)

"After reviewing the Summary and other information contained on TFA's website, Windsor responded to a questionnaire on TFA's website and TFA subsequently set up an initial phone call." (FAC ¶ 17.) "During that initial phone call, Windsor spoke with Sells and Kalagias regarding TJTC's financial health and sought information regarding Threw's reasoning for wanting to sell TJTC." (*Id.*)

On April 10, 2024, Windsor spoke to Threw, Sells, and Kalagias in a phone call where "Threw, Sells, and Kalagias reiterated the information regarding TJTC's business

operations and financial health previously detailed in the Summary and the Review." (*Id.* ¶ 19.) "Threw also discussed his management style, TJTC's ability to operate without his involvement, and the possibility of someone like Windsor taking over the company." (*Id.*)

Between April 1, 2024, and June 28, 2024, "Sells and Kalagias represented to Windsor that TFA had performed a complete audit of TJTC." (*Id.* ¶ 20.) "TFA brought Jared Olson onto the team for the TJTC matter when Windsor asked Sells and Kalagias whether he needed to retain his own attorney." (*Id.* ¶ 21.) When Windsor signed a non-disclosure agreement, he received a Confidential Business Review ("the Review") containing more information about TJTC. (*Id.* ¶ 22.) The Review made the same representations as the Summary and additionally stated the following:

1. Threw's reason for selling the business was his desire to retire.
2. "Coastal Communications," the name of the business, was responsible for generating sales, notwithstanding that Threw had a good reputation based on years of experience in the industry.
3. Coastal Communications had developed relationships with its clients over the years, resulting in repeat work and a strong referral base.
4. Threw's wife's role—handling billing, payroll, and accounting—was not a very active role, perhaps amounting to ten hours per month.
5. Any of the three managers could step up to take on Threw's responsibilities, since each managed his/her own projects.
6. HP Communications, AT&T, Cox Communications, Zayo, Wilcon, Time Warner Cable, Century Link, Vinculums, Mobilitie, Extenet, Crown Castle, Ubiquity, and Wyyerd were notable clients.
7. Only one client had discontinued Coastal Communications's services.
8. New or repeat clients usually approached Coastal Communications with business, rather than Coastal Communications seeking out clients.
9. Coastal Communications did not have a slower season throughout the holidays.

10. Coastal Communications' recent hiring of new employees was the result of previous employees' moves further from the office and/or desire to continue working from home.

(*Id.* ¶ 36(c)–(l).)  "After careful consideration of the Review and multiple conversations with Sells, Kalagias, and Threw, Windsor informed Sells and Kalagias that he was interested in buying TJTC." (*Id.* ¶ 24.)  Then, "Jared Olson participated in the negotiations between Windsor and Threw," which resulted in the execution of the Stock Purchase Agreement.  (*Id.* ¶ 25.)  Olson drafted the documentation used to complete the sale, including the Stock Purchase Agreement. (*See id.* ¶ 30.)  "In multiple interactions with him prior to the close of escrow, Threw, Sells, and Kalagias repeatedly reassured Windsor that the representations set forth in the Summary and the Review were accurate, and that Coastal Communications was doing well." (*Id.* ¶ 31.)

Prior to the execution of the Stock Purchase Agreement on June 28, 2024, Windsor received a balance sheet from Threw's wife and a letter from Threw.  (*See id.* ¶¶ 37–38.) The Balance Sheet "overstated the value of the business's assets (as of December 31, 2023) by over $30,000." (*Id.* ¶ 37.)  The letter from Threw, sent June 17, 2024, (the "June Letter") set "forth the status of several signed Coastal Communications projects."  (*Id.* ¶ 38.) Specifically, the June Letter stated the following:

1. Coastal Communications expected to receive a purchase order from Advantage Engineering AT&T in July 2024 for 17 small cell designs.

2. Coastal Communications expected to receive a purchase order in excess of $200,000 from Crown Castle T-Mobile Small Cell in July 2024 for over 100 designs.

3. Coastal Communications expected to receive a purchase order in excess of $200,000 from Crown Castle Verizon Small Cell in September 2024 for over 100 designs.

(*Id.* ¶ 38(a)–(c).)

Windsor alleges that the Summary, Review, Balance Sheet, and June Letter contained untrue representations.  (*Id.* ¶ 40.)  He asserts that the "true facts" were:

1. The 10% down payment of $83,500 would never have been able to yield a $143,000 return; that projection had been based on applying Q1 2025 purchase orders to the rest of the year. TJTC had no basis for doing so.

2. Cox Communications, AT&T, Time Warner Cable, Zayo, Wilcon, Vinculums, Mobilitie, Ubiquity, and Extenent were no longer TJTC clients and had no active purchase orders. HP Communications and Century Link, while they remained active clients, did not provide substantial business to the extent Threw had represented.

3. Wyyerd and Crown Castle, while active clients, did not have any purchase orders or discussions regarding purchase orders that matched the representations Threw made to Windsor.

4. None of the managers Threw had represented were qualified and equipped to be CEO were able to do so.

5. Nine critical employees listed in the Review had left their Coastal Communications employment by the close of escrow.

6. Threw was TJTC's primary source of business.

7. Threw did not allow other employees, including the three individuals he represented were qualified to take over as CEO, to join business meetings or sales pitches unless necessary to fulfill an existing purchase order.

8. Threw handled client accounts and relationships on his own and was the only person at TJTC who brought in clients.

9. The company was not financially viable. Late in Q1 of 2024, the company's revenues dropped significantly lower than the prior three years.

10. Management of the billing, payroll, and accounting aspects of Coastal Communications' business constitutes a very active role. Those functions currently require at least forty hours per month.

11. Coastal Communications had lost a majority of the clients listed in the Review at the time of the closing of the Transaction.

25-cv-01102-TWR (DEB)

12. The customer purchase orders referenced in the June Letter did not exist. On or about August 8, 2024, Windsor learned from Crown Castle that there were no such projects on the horizon.

(*Id.* ¶¶ 40(a)–(j), 45–46, 48.)

"On June 17, 2024, Threw emailed Sells: 'I probably need to have a meeting with Michael [Windsor] to share that work has significantly slowed over the past 4 weeks due to it being an election year, interest rates for construction and now the lay offs by one of our biggest clients. . . . Not a good time at the moment.'" (*Id.* ¶ 41.) But "Threw did not share this information with Windsor." (*Id.*) Then, on June 18, 2024, "Threw emailed Nick Patrick, one of CCH's vendors, 'Boy, it has slowed down for us the past month.'" (*Id.* ¶ 42.) Threw also "did not inform Windsor of this business slow down." (*Id.*) "Windsor would not have caused CCH to enter into the Transaction had he known the true state of the Coastal Communications business." (*Id.* ¶ 44.) Plaintiff has allegedly incurred "at least $435,000 in unanticipated expenditures related to the dire state of the Coastal Communications business." (*Id.* ¶ 55.)

## II.     Procedural History

On April 30, 2025, Plaintiff filed its initial Complaint alleging various securities fraud causes of action relating to its purchase of Defendant Threw's business, brokered by the TFA Defendants. (*See* ECF No. 1.) On July 21, 2025, Defendant Threw filed a Motion to Dismiss for Failure to State a Claim. (*See* ECF No. 9.) On September 2, 2025, TFA Defendants filed a Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction over the Individual TFA Defendants. (*See* ECF No. 15.) On January 6, 2026, the Court granted in part and denied in part both motions. (ECF No. 32.) Then, on March 12, 2026, Plaintiff filed a First Amended Complaint. (ECF No. 33.) In response, on March 26, 2026, Defendants filed the instant motions. (ECF Nos. 34, 35.)

///

///

///

25-cv-01102-TWR (DEB)

**TFA DEFENDANTS' 12(b)(2) MOTION**

## I. Legal Standard

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10.

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Goodyear*, 564 U.S. at 924). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

For a state court to exercise specific jurisdiction, by contrast, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is analyzed under a three-prong test: "(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must

25-cv-01102-TWR (DEB)

be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Mavrix Photo, Inc. v. Brand Techs.*, Inc., 647 F.3d 1218, 1227–28 (9th Cir. 2011) (emphasis in original) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  The plaintiff bears the burden of establishing the first two prongs and if they do, the burden then shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1228 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Under prong one, for suits sounding in fraud, a purposeful direction analysis is most often used.  *See Lyddon v. Rocha–Albertsen*, 2006 WL 3086951, at *26 (E.D. Cal. 2006).[1] To establish purposeful direction, there is a three-part test stemming from the case *Calder v. Jones*, 465 U.S. 783 (1984).  *See Schwarzenegger*, 374 F.3d at 803.  Under the *Calder* effects test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

Under prong two, for the claim to "arise out" of forum-related activities, a "Plaintiff[] must show that [it] would not have suffered an injury 'but for' [the Defendant's] forum related conduct."  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).  Lastly, the Ninth Circuit applies a seven-part balancing test to determine whether a case satisfies the "fair play and substantial justice" element.  *See Dole Food Co.*, 303 F.3d at 1114.

Further, under the fiduciary shield doctrine, the fact that a "corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Winery v. Graham*, No. C 06–3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 2007) (quoting *Colt Studio, Inc. v. Badpuppy Enterprise*, 75

---

[1]   In a securities case, there is often "elements both of purposeful availment and purposeful direction." *In re LDK Solar Securities Litigation*, No. C0705182WHA, 2008 WL 4369987, at *6 (N.D. Cal. 2008).

25-cv-01102-TWR (DEB)

F.Supp.2d 1104, 1111 (C.D. Cal. 1999)).  But the individual TFA Defendants' status as "employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 789–90.  Jurisdiction is proper over a corporate employee when the plaintiff shows that the "corporate employee is the moving, active, conscious force behind the infringing activity by demonstrating that the corporate officer directs, controls, ratifies, or participates in the infringing activity." *Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3 (N.D. Cal. Apr. 16, 2009).  "Accordingly, for purposes of specific jurisdiction, the Court's analysis is little altered by the fiduciary shield doctrine." *Lewis v. Travertine, Inc.*, No. 2:17-cv-00016-CAS (JCX), 2017 WL 1511292, at *6 (C.D. Cal. Apr. 24, 2017).

## II.    Analysis

### A.    *Defendant Olson*

In the Court's Order Granting in Part and Denying in Part the Motions to Dismiss, the Court denied TFA Defendants' 12(b)(2) Motion with respect to Defendant Olson.  (*See* ECF No. 32 ("First MTD Order") at 11–14.)  Despite this, TFA Defendants again argue that Defendant Olson should be dismissed for lack of personal jurisdiction.  (*See* TFA MTD FAC at 13.)  Not so.[2]  First, this argument was already raised and rejected in the Court's previous order.  Second, TFA is incorrect that "[a]ny injuries to CCH result in consequences at its place of incorporation, Wyoming."  (TFA MTD FAC at 13.)  Instead, the Ninth Circuit has noted that a corporation feels an injury where the corporation has its principal place of business.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) ("In determining the situs of a corporation's injury, '[o]ur precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of

---

[2]    The Court finds TFA Defendants' argument that "Plaintiff concedes that this Court lacks personal jurisdiction over Defendant Olson" is plainly incorrect.  (TFA Reply at 5–6.)  In fact, as TFA Defendants' Reply expressly notes, (*see id.* at 5), Plaintiff argues that the Court already found Plaintiff established personal jurisdiction over Defendant Olson.

business.'" (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002)).) Moreover, TFA Defendants conceded this point at the hearing.  (*See* ECF No. 42.) Accordingly, the Court **DENIES** TFA Defendants' 12(b)(2) Motion as to Defendant Olson.

### B.      *Defendant Sells*

TFA Defendants further argue that the First Amended Complaint fails to cure the lack of personal jurisdiction in the original Complaint for Defendant Sells.  (*See* TFA MTD FAC at 9–12.)  Specifically, TFA Defendants argue the new allegations "that Defendants Sells and Kalagias communicated with Plaintiff by telephone while they remained in Nebraska" are insufficient to establish purposeful direction.  (*Id.* at 10.)  In response, Plaintiff argues there is personal jurisdiction over Sells because "[s]he was one of the two TFA agents on Windsor's initial call with TFA, and she was one of his two primary points of contact from the beginning of April, 2024 through the Transaction's closing."  (TFA Opp'n at 4.)

First, as to purposeful direction, the FAC makes numerous allegations that Sells individually made misrepresentations about the state of TJTC.  (*See, e.g.,* FAC ¶ 31 ("Sells, and Kalagias repeatedly reassured Windsor that the representations set forth in the Summary and the Review were accurate, and that Coastal Communications was doing well.").)  This qualifies as an intentional act even if it was done virtually and even if the representations do not rise to the level of an intentional tort.  *See Zach Porter Invs., LLC v. Reiss Tech. Corp.*, 748 F. Supp. 3d 950, 967 (D. Idaho 2024).  Additionally, this act was expressly aimed at California.  To be clear—contrary to TFA Defendants' arguments—the Court is not finding personal jurisdiction based on the residence of Plaintiff.  Rather, the Court is focused on Defendant Sells' connection to the forum state.  Here, Defendant Sells' act of making alleged misrepresentations about a California business to induce the sale of said California business satisfies express aiming.  *See id.* ("Where, as here, misrepresentations are made in the forum state—in person, through an agent, or electronically—the express aiming requirement is met."); *see also Hayes v. Scherer*, No.

25-cv-01102-TWR (DEB)

821CV00389JVSADSX, 2021 WL 4861169, at *4 (C.D. Cal. Sept. 9, 2021) (finding purposeful direction was established over an individual who served in as an intermediary in a securities transition when she (1) corresponded with the plaintiffs via email, (2) induced them into investing by promising safety and security, and (3) ultimately caused harm in the forum state). Lastly, as established above, *see supra* section II.A, this act caused harm that Defendant Sells knew was likely to be suffered in the forum state because the misrepresentations concerned the sale of a California business to a corporation with its principal place of business in California.

Further, because Plaintiff alleges it would not have purchased TJTC securities without the involvement of Defendant Sells and her representations, (*see* FAC ¶ 69–70), the claim also arises out of forum-related activities. *See Myers*, 238 F.3d at 1075. Because TFA Defendants fail to argue the final factor of fair play and substantial justice, specific personal jurisdiction over Defendant Sells is established. Accordingly, the Court **DENIES** TFA Defendants' 12(b)(2) Motion as to Defendant Sells.

### C.    *Defendant Kalagias*

Like the argument raised for Defendant Sells, TFA Defendants argue that the First Amended Complaint fails to cure the lack of personal jurisdiction in the original Complaint for Defendant Kalagias. (*See* TFA MTD FAC at 9–12.) In response, Plaintiff argues there is personal jurisdiction over Defendant Kalagias because she "was the TFA agent who actually brokered the deal memorialized in the SPA" and she knew that the "business she was marketing for sale was based in California." (TFA Opp'n at 4–5.) For the same reasons Defendant Sells is subject to personal jurisdiction, so is Defendant Kalagias. Accordingly, the Court **DENIES** TFA Defendants' 12(b)(2) Motion as to Defendant Kalagias.

/ / /

/ / /

/ / /

/ / /

11

**DEFENDANTS' 12(b)(6) MOTIONS**

**I.    Legal Standard**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

If the court dismisses a complaint for failure to state a claim under Rule 12(b)(6), the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Further, under Rule 9(b), when a party alleges fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, the Private Securities Litigation Reform Act ("PSLRA") requires that a securities fraud complaint "specify each statement alleged to have been misleading, the

reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). The PSLRA also requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u–4(b)(2)(A).

## II.    Section 10(b) of the Exchange Act[3]

Defendant Threw and TFA Defendants move to dismiss Plaintiff's 10b-5 claim. (*See* Threw MTD FAC at 2–6.; TFA MTD FAC at 17–22.)  The elements of a federal securities fraud Section 10b-5 claim are "(1) a material misrepresentation or omission, (2) scienter, *i.e.,* a wrongful state of mind, (3) a connection to the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1136 (S.D. Cal. 2008).  In opposition, Plaintiff alleges four sources of material misrepresentations and/or omitted material facts: (1) the Summary, (2) the Review, (3) the Balance Sheet, and (4) the June Letter.  (*See* FAC ¶ 40.)

/ / /

---

[3]    As discussed at the hearing, the Court is concerned that Plaintiff failed to meaningfully amend the complaint based on the Court's previous order.  For example, the Court's Order Granting in Part the Motions to Dismiss the original complaint found "the statement 'Coastal Communications had developed relationships with its clients over the years, resulting in repeat work and a strong referral base' is vague puffery."  (First MTD Order at 21.)  Yet, Plaintiff did not remove this allegation in its First Amended Complaint.  (*See* FAC ¶ 36(e).)  Similarly, Plaintiff re-alleged the same facts relating to the Balance Sheet despite the Court's indication that the Balance Sheet was not actionable because it was allegedly made by Jeanine Threw, who is not a party to this lawsuit.  (*See* First MTD Order at 18.)  Additionally, there are a number of alleged misrepresentations that Plaintiff appears to have kept in the FAC while removing the allegations of falsity.  For example, the FAC alleges it was a misrepresentation to state "Coastal Communications did not have a slower season throughout the holidays" but removed its allegation about the falsity of this statement.  (*See* FAC at 36(k); ECF No. 33 Exh. B ("Redlined FAC") at 12.)  Similarly, the FAC alleges it was a misrepresentation to state "Threw's reason for selling the business was his desire to retire" but removed its allegation about the falsity of this statement.  (*See* FAC at 36(c); Redlined FAC at 11.)  Lastly, the Court specifically instructed Plaintiff not to omit pertinent parts of the alleged misstatements.  (*See* First MTD Order at n.3.)  But the FAC continues to state misrepresentations based on statements in the Review that materially differ.  (*See, e.g.,* FAC ¶ 36(k).)

25-cv-01102-TWR (DEB)

### A.      TFA Defendants' Motion to Dismiss

TFA Defendants argue Plaintiff fails to state a 10b-5 claim because (1) the FAC only alleges puffery and forward-looking statements, (2) the FAC does not establish that TFA or the Individual TFA Defendants were the makers of the statements contained in the Summary and the Review, (3) the FAC does not allege TFA or the Individual TFA Defendants did not hold the beliefs they professed or that the beliefs were objectively untrue, and (4) Plaintiff has not plead scienter with particularity. (*See* TFA MTD FAC at 17–22.)

The Court starts with scienter. The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Court thus must consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.,* 320 F.3d 920, 938 (9th Cir. 2003). An inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *See Tellabs, Inc. v. Makor Issues & Rts.*, Ltd., 551 U.S. 308, 324 (2007).

TFA Defendants argue "Plaintiff's generalized allegations of knowledge or recklessness is insufficient under the PSLRA." (TFA MTD FAC at 22.) Plaintiff fails to respond to this argument in its Opposition. (*See generally* TFA Opp'n.) This is grounds for waiver.[4] *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d

---

[4]      Plaintiff's Opposition to the TFA's Motion to Dismiss the First Amended Complaint is eight pages. (*See generally* TFA Opp'n.) Accordingly, Plaintiff had plenty of room to address all the arguments raised in the TFA Defendants' Motion. *See* S.D. Cal. LR 7.1(h) ("Briefs or memoranda in support of or in opposition to all motions noticed for the same motion day must not exceed a total of twenty-five (25) pages in length"). While Plaintiff's counsel indicated that the Opposition responded to TFA Defendant's argument on scienter by arguing falsity, (*see* ECF No. 42), the Opposition never argues that any statement was intentionally or knowingly made falsely. (*See generally* TFA Opp'n.) Accordingly, Plaintiff's arguments based on falsity do not suffice to cover scienter.

1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Further, a review of the FAC illustrates there are no specific allegations that TFA or any of the TFA employees acted with deliberate or conscious recklessness. (*See generally* FAC.) To state a claim under Section 10b-5, Plaintiff would need to plead with particularity scienter for *each* defendant. *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1030 (S.D. Cal. 2005) ("Under no circumstances should the group-published information doctrine relieve plaintiffs of their burden to plead scienter."). Here, Plaintiff has failed to do so for any of the TFA Defendants. Accordingly, the Court **GRANTS** TFA Defendants' Motion to Dismiss with regard to the Section 10b-5 claim.

### B.    *Defendant Threw's Motion to Dismiss*

The elements of a federal securities fraud Section 10b-5 claim are "(1) a material misrepresentation or omission, (2) scienter, *i.e.,* a wrongful state of mind, (3) a connection to the purchase or sale of a security, (4) reliance,[5] (5) economic loss, and (6) loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss." *Flaxel*, 541 F. Supp. 2d at 1136. Defendant Threw argues the FAC fails to allege (1) any actionable misstatement attributable to himself, (2) scienter, or (3) a plausible omission theory. (*See* Threw MTD FAC at 2–6.)

### 1.    *Material Misrepresentation or Omission*

The Courts starts with whether the FAC alleges any actionable misstatements or omissions. Defendant Threw argues that "[t]he statements at issue in the Summary,

---

[5]    In Defendant Threw's Reply, he argues "Plaintiff's simultaneously-filed opposition briefs . . . directly contradict each other on a central element: reliance." (Threw Reply at 2.) Specifically, Defendant Threw argues that the following two statements are contradictory: (1) "CCH's due diligence relied only on the information Threw provided" (Threw Opp'n at 1–2) and (2) "[a]s the sole, purportedly neutral source of information from which CCH could conduct due diligence, TFA and its agents cannot escape possible liability . . ." (TFA Opp'n at 5.) The Court disagrees that "both cannot be true." (Threw Reply at 3.) Undoubtably the information originated from Threw; however, TFA can still be the only *neutral* source of information.

25-cv-01102-TWR (DEB)

Review, and Balance Sheet were "made" by others, not Threw, for purposes of Rule 10b-5 liability" and the FAC's allegations are vague and nonactionable. (Threw MTD FAC at 2–3.)  As to who the "maker" of the statements was, Plaintiff argues the "misrepresentations originated from Threw himself, as the sole owner of all of TJTC's shares at that time" and Defendant Threw reiterated the information detailed in the Summary and Review during an April 10, 2024, call. (Threw Opp'n at 3.)  Assuming without deciding that Defendant Threw is the "maker" of the statements in the Summary and Review because the information came from him,[6] the Court considers whether any misrepresentation is actionable.

Plaintiff argues that Defendant Threw's argument "falls apart, particularly with regard to the allegations in paragraphs 40(b) and (c) of the FAC." (*Id.* at 4.)  Paragraph 40(b) and (c) state:

> b. Cox Communications, AT&T, Time Warner Cable, Zayo, Wilcon, Vinculums, Mobilitie, Ubiquity, and Extenent were no longer TJTC clients and had no active purchase orders. HP Communications and Century Link, while they remained active clients, did not provide substantial business to the extent Threw had represented.
>
> c. Wyyerd and Crown Castle, while active clients, did not have any purchase orders or discussions regarding purchase orders that matched the representations Threw made to Windsor.

(FAC ¶ 40(b)–(c).)  The Court's first concern with this argument is that Plaintiff is pointing to allegations of falsity—not allegations of misrepresentations—in attempt to argue it sufficiently alleged material misrepresentations.  This leaves it up to the Court to try and match-up the misleading statement with the reasons why it was false or misleading.  Courts in this Circuit have rejected pleadings for this very reason.  *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1075 (N.D. Cal. 2001) (granting motion to dismiss because the plaintiffs "failed to craft a complaint in such a way that a reader can,

---

[6]    Because Plaintiff's 10b-5 claim fails on multiple bases, the Court declines to re-explain that Plaintiff must allege the "maker" of each allegedly actionable statement or omission. (*See* First MTD Order at 17–18.)

without undue effort, divine precisely which statements (or portions of statements) are alleged to be false or misleading, and the reason or reasons why each statement is false or misleading"); *see also In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 841 (N.D. Cal. 2000) (granting motion to dismiss when the plaintiffs "left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading."). Nonetheless, when matching up the allegations of falsity with the misrepresentation, the relevant page in the Review appears as follows:

**D. Client Overview**

The client base for Coastal Communications is made up of 100% local and national telecom companies.

**Notable Names:**
- HP Communications
- AT&T
- Cox Communications
- Zayo
- Wilcon
- Time Warner Cable
- Century Link
- Vinculums
- Mobilitie
- Extenet
- Crown Castle
- Ubiquity
- Wyyerd

**Contract examples:**
1) Crown Castle: $561,580
2) Wyyerd: $380,476
3) Ubiquity: $206,287
4) Bechtel: $132,888

**Long Term Relationships:**
1) HP Communications: $623,944
2) Zayo: $24,843

(Review at 8; FAC ¶ 36(h) ("HP Communications, AT&T, Cox Communications, Zayo, Wilcon, Time Warner Cable, Century Link, Vinculums, Mobilitie, Extenet, Crown Castle, Ubiquity, and Wyyerd were notable clients.") Upon examination of Plaintiff's allegations of falsity, the Court finds this alleged misrepresentation is non-actionable. First, as to paragraph 40(c), it is unclear what "the representations Threw made to Windsor" is referencing. (FAC ¶ 40(c).) Similarly, as to 40(b), it is unclear what Plaintiff means by "substantial business to the extent Threw had represented." (*Id.* ¶ 40(b).) This leaves "Cox Communications, AT&T, Time Warner Cable, Zayo, Wilcon, Vinculums, Mobilitie, Ubiquity, and Extenet were no longer TJTC clients and had no active purchase orders." (*Id.*) The general allegation that these companies "were no longer TJTC clients" fares no better than the original Complaint's statement that these companies were no longer clients "at the time of the closing." (ECF No. 1 ¶ 42.) Plaintiff cannot cure a deficient allegation by making it vaguer. Instead, Plaintiff must plead *when* these companies ceased to be clients of TJTC or that they were no longer clients *when* the statement in the Review was

17

25-cv-01102-TWR (DEB)

made.  In the absence of clear allegations, the Court is unable to determine if the statements about these companies were false or misleading when made.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *as amended* (Aug. 4, 1999) ("In the absence of such specifics, we cannot ascertain whether there is any basis for the allegations that the officers had actual or constructive knowledge of SGI's problems that would cause their optimistic representations to the contrary to be consciously misleading."); *Patel v. Parnes*, 253 F.R.D. 531, 550 (C.D. Cal. 2008) (explaining that Rule 9(b) "requires that plaintiffs allege inconsistent contemporaneous statements and/or information known to defendants at the time the statement was made that demonstrate its falsity").[7]

Turning to the other main argument proffered by Plaintiff, the Court considers Plaintiff's allegation that Defendant Threw's stated "three of  TJTC's managers were equipped to take over as CEO."  (Threw Opp'n at 3–4.)  If Plaintiff is relying on the statement in the Review, the full statement reads as follows:

**Do you have any staff close to your proximity in experience?  Is anyone ready to step up and take on your responsibilities?**

> Any of the 3 managers could be, they each manage their own projects. It would probably be needed to at least replace me in some manner or promote someone with in to be a project manager or hire an entry level PM.

**If someone takes over a project mgmt. position someone would be able to step up into your role?**

> Yes.  A good one for this would be our drafting manager Carlos because he deals with so many clients. You could take one of his drafting leads and promote them to a drafting manager.

(Review at 4.)  If Plaintiff would like to rely on a statement made by Defendant Threw during the April 10, 2024, call, Plaintiff should explicitly plead what was said that differed from the representation in the Review.  As to the statement in the Review, because this is

---

[7]   At the hearing, Defendant Threw argued that the statements about the "client base" were not actionable because "client base" is vague and does not necessarily mean active clients.  (ECF No. 42.)  Plaintiff responded that listing these companies as part of the "client base" was misleading if those clients were not current clients.  (*Id.*)  While the Court finds that Plaintiff could plausibly allege this representation was misleading, this allegation on its own would still fail under scienter unless Plaintiff could allege that this representation was so false it was patently obvious.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("[R]eporting false information will only be indicative of scienter where the falsity is patently obvious—where the facts are prominent enough that it would be absurd to suggest that top management was unaware of them.") (cleaned up).  Given that there are multiple reasonable interpretations of the "notable names" in the "client base," the Court is skeptical that Plaintiff could sufficiently allege scienter purely based on falsity in regard to this statement.

25-cv-01102-TWR (DEB)

an opinion statement, Plaintiff must allege that Defendant Threw did not hold the belief he professed and that the belief was objectively untrue. Plaintiff has not done so. Plaintiff merely alleges that "[o]ne manager lacked any experience regarding human resources, payroll, or managing schedules" and another manager "did not know the financial position of the company and had never been able to work with other departments." (FAC ¶ 40(d).) While these facts might now illustrate that these managers are not prepared to act as CEO, these allegations do not plausibly allege falsity for Defendant Threw's opinion statement. Plaintiff must connect the fact allegations to Defendant Threw's opinion statement to illustrate that he made this statement without believing it or Plaintiff must allege these facts were material omissions that were necessary to make the statement not misleading. Plaintiff has done neither; thus, this is not an actionable misrepresentation or omission.

Because similar problems exist for Plaintiff's list of alleged misrepresentations, the Court declines to detail why each misrepresentation fails. Although this is sufficient to grant Defendant Threw's Motion to Dismiss Plaintiff's 10b-5 claim, the Court will also explain why Plaintiff has failed to allege scienter as to Defendant Threw.

### 2. Scienter

As explained above, the PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Court thus must consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *No. 84 Employer–Teamster Joint Council Pension Trust Fund,* 320 F.3d at 938. An inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *See Tellabs, Inc.*, 551 U.S. at 324.

In applying this standard, the Court notes that Plaintiff's argument that "the FAC alleges details Threw knew *or should have known* made his statements to Windsor misrepresentations," (Threw Opp'n at 5 (emphasis added)), melds the scienter and

negligence standards.    Merely pleading that Defendant Threw should have known something does not rise to the level of deliberate or conscious recklessness.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("At most, it creates the inference that he *should* have known of the violations.  This is not sufficient to meet the stringent scienter pleading requirements of the PSLRA." (emphasis in original)).

Turning to the merits, Plaintiff's Opposition points to the following as allegations of falsity and scienter: (1) "TJTC had no basis for applying the projections for the first quarter of 2025 to the rest of the year," (2) "Threw represented that certain companies were clients and had outstanding purchase orders; many of these purported clients were not, in fact, clients at the time Threw made those statements," (3) "Threw had no reason to believe any of the three managers could take over as CEO," (4) "Threw was the only individual at TJTC generating business and bringing in clients."  (Threw Opp'n at 5–6 (citing FAC ¶ 40).)  The Court will first analyze each allegation individually and then holistically.  *See No. 84 Employer–Teamster Joint Council Pension Trust Fund,* 320 F.3d at 938.

Because Plaintiff is alleging scienter largely based on falsity, the falsity of statement must be so "patently obvious" that it would be "absurd" to assume that they were not made with scienter.  *See In re Arrowhead Rsch. Corp. Sec. Litig.*, No. 214CV07890CBMASX, 2016 WL 6681180, at *5 (C.D. Cal. Aug. 18, 2016), *aff'd*, 711 F. App'x 434 (9th Cir. 2018); *Zucco*, 552 F.3d at 1101.  Each of Plaintiff's identified allegations fails to allege falsity and thus also fails to allege scienter individually or holistically.

First, the allegation that TJTC had no basis for applying the projections for the first quarter of 2025 to the rest of the year, does not on its own illustrate fraudulent intent.  While this might indicate that someone used incorrect projections, the FAC does not allege any defendant made that decision, or how or why it would have been obvious that those projections would be incorrect.  Second, Plaintiff alleges Defendant Threw represented that certain companies were clients that were not at the time he made those statements.  As discussed above, *see supra* II.B.1, because the allegations fail to allege falsity at the time made, they also fail to allege scienter.  Third, the allegation that Defendant Threw had no

25-cv-01102-TWR (DEB)

reason to believe that any of the three managers could take over as CEO also fails for a lack of falsity. *See id.* Fourth, Plaintiff's allegations about the statement that the name of the business was responsible for generating sales fail to allege falsity and thus also fail to allege scienter because the FAC does not allege both that Defendant Threw did not hold the belief he professed and that the belief was objectively untrue. *See City of Dearborn Heights*, 856 F.3d at 615–616. The FAC alleges "Threw handled client accounts and relationships on his own and was the only person at TJTC who brought in clients." (FAC ¶ 40(i).) This statement on its own does not illustrate that Defendant Threw did not believe that it was Costal Communication's name that was bringing in business. Even more clearly, the statement was not so obviously false that it would be absurd to assume it was not made with scienter.

At the hearing, Plaintiff argued that there was scienter for Defendant Threw's statements about expected customer purchase orders in the June Letter because the expected purchase order had never been discussed with the clients. (*See* ECF No. 42.) The Court agrees with Plaintiff that if Defendant Threw made statements about "expected purchase orders" with zero basis for those statements, then Plaintiff could allege falsity and scienter because it would be obvious that that those statements were made with fraudulent intent if they were completely made up. But the FAC does not make those allegations. Instead, it alleges "[t]he customer purchase orders referenced in the June Letter did not exist. On or about August 8, 2024, Windsor learned from Crown Castle that there were no such projects on the horizon." (FAC ¶ 48.) The Court understands this allegation to mean the expected purchase orders did not exist in August 2024, not that Threw made the statements in the June Letter without any basis for those expectations. Thus, these allegations do not provide evidence that the June Letter's misrepresentations were made with scienter.

In sum, Plaintiff has failed to allege scienter against Defendant Threw. Accordingly, the Court **GRANTS** Defendant Threw's Motion to Dismiss the 10b-5 claim against him. / / /

25-cv-01102-TWR (DEB)

## III. California Law Claims

### A. California Corporations Code §§ 25401 and 25501

Defendant Threw moves to dismiss the California Corporations Code § 25401 claim. (*See* Threw MTD FAC at 6.) Under California Corporations Code § 25401, "[i]t is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Section 25501 establishes a private remedy for damages and rescission based on section 25401 liability.

Defendant Threw argues "[t]he identical deficiencies that require dismissal of the Section 10(b) claim . . . apply equally here." (Threw MTD FAC at 6.) Plaintiff also relies on its Section 10b-5 arguments in opposing dismissal of the Section 25401 claim. (*See* Threw Opp'n at 2.) For the reasons explained above, *see supra* II.B, the **GRANTS** Defendant Threw's Motion to Dismiss the California Corporations Code §§ 25401 and 25501 claim.

### B. Intentional Misrepresentation

Defendant Threw and TFA Defendants move to dismiss the intentional misrepresentation claim for the same reasons they argue the Section 10b-5 claim is deficient. (*See* Threw MTD at 7–8; TFA MTD FAC at 26.) Plaintiff also relies on the same arguments made in support of its 10b-5 claim. (*See* Threw Opp'n at 2; TFA Opp'n at 6.) Under California law, the elements of intentional misrepresentation are: (1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *See Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). While the Parties do not specifically address the difference for pleading intent under a securities fraud claim, because the PSLRA does not apply, the pleading requirement for intentional misrepresentation is lower because "Rule 9(b) requires particularity only in regard to the

22

circumstances of fraud, while '[m]alice, intent, knowledge, and other conditions of a person's mind' may be pled generally." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1036 (9th Cir. 2016) (citing Fed. R. Civ. P. 9(b)).

Because the elements of intentional misrepresentation mirror the Section 10b-5 claim, *see supra* Section II, the Court **GRANTS** Defendant Threw's and TFA Defendants' Motions to Dismiss the intentional misrepresentation claim. *See Alberts v. Bridge Hous. Corp.*, No. 25-CV-2908-RSH-SBC, 2026 WL 962716, at *6 (S.D. Cal. Apr. 9, 2026) (dismissing intentional misrepresentation claim when the plaintiff failed "to identify on a statement-by-statement basis who made each statement, when and how each statement was made, what each statement was, and how each statement was false.").

### C. *Negligent Misrepresentation*

Defendant Threw and TFA Defendants also move to dismiss the negligent misrepresentation claim for the same reasons they argue the Section 10b-5 claim is deficient. (*See* Threw MTD at 7; TFA MTD FAC at 26.) Plaintiff again relies on the same arguments made in support of its 10b-5 claim. (*See* Threw Opp'n at 2; TFA Opp'n at 6.) In doing so, both Parties agree that Rule 9(b) should apply to Plaintiff's negligent misrepresentation claim. (*See* Threw Opp'n at 2.) Accordingly, the Court applies the same Rule 9(b) heighted pleading standard but recognizes that "[d]istrict courts in the Ninth Circuit are split on the question of whether Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims under California law." *Levit v. Nature's Bakery, LLC*, 767 F. Supp. 3d 955, 970 (N.D. Cal. 2025); *Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) (applying Rule 9(b) to a negligent misrepresentation claim when the plaintiffs did not contest that Rule 9(b) applied).

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) (citation omitted). The elements for

25-cv-01102-TWR (DEB)

negligent misrepresentation thus mirror intentional misrepresentation except that for "a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Id.*

The Court finds that many of Plaintiff's allegations, as currently plead, sound more in negligence than in fraud. For example, in paragraph 40(a), Plaintiff alleges that the statement about the return on investment was incorrectly based on Q1 2025 purchase orders and "TJTC had no basis" for using those purchase orders. As another example, Plaintiff's allegations in paragraph 40(d), on the three project managers that Defendant Threw stated could be ready to take on his responsibilities, are based on facts that go towards Defendant Threw lacking a reasonable basis for making the statement. But Plaintiff has largely failed to specifically allege which individuals made statements without a reasonable ground for believing them to be true. The specific allegations for negligent misrepresentation lump all defendants together, (*see* FAC ¶ 86), and in paragraphs 36–41 most of the allegations are not clear which defendant made which statement without a reasonable ground for believing they were true. (*See, e.g., id.* ¶ 40(a) (stating "TJTC had no basis for doing so.").) Accordingly, while the Court finds that Plaintiff can cure this deficiency, the Court **GRANTS** Defendant Threw's and TFA Defendants Motions to Dismiss the negligence misrepresentation claim. *See Puri*, 674 F. App'x at 689 (finding a negligent misrepresentation claim failed under Rule 9(b) when the complaint's allegations concerning negligent misrepresentation only included "broad reference to allegations made in previous paragraphs, lacking particularized detail of any alleged misrepresentations").

### D. California Corporations Code § 25216

At the hearing, both Parties conceded that California Corporation Code § 25216(a) does not have private right of action. (ECF No. 42.) Thus, the Court **GRANTS** TFA's Motion to Dismiss as to the California Corporation Code § 25216(a) claim and **DISMISSES WITH PREJUDICE** the California Corporation Code § 25216(a) claim.

///

24

## E.    *California Corporation Code § 25403*

TFA Defendants argue that California Corporation Code § 25403 does not provide a private right of action. (*See* TFA MTD at 25 (collecting cases).)  Plaintiff fails to respond to this argument. (*See generally* TFA Opp'n; TFA Reply at 2.)  Accordingly, the argument is waived.  *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.  Thus, the Court **GRANTS** TFA's Motion to Dismiss as to the California Corporation Code § 25403 claim and **DISMISSES WITH PREJUDICE** the California Corporation Code § 25403 claim.

## IV.    Leave to Amend

Defendant Threw and TFA Defendants request dismissal with prejudice. (*See* TFA MTD at 27; Threw MTD at 8.)  Plaintiff does not address leave to amend. (*See generally* TFA Opp'n; Threw Opp'n.)  In dismissing a complaint for failure to state a claim under Rule 12(b)(6), the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127 (quoting *Doe*, 58 F.3d at 497).  At the hearing, Plaintiff represented it could amend to give more factual specificity to its claims. (ECF No. 42.)  Thus, the Court **GRANTS** leave to amend for the following claims: (1) Section 10b-5, (2) California Corporations Code § 25401, (3) intentional misrepresentation, and (4) negligent misrepresentation.

If Plaintiff chooses to amend, Plaintiff **SHALL** include a statement-by-statement chart that specifically identifies: (1) each statement or action alleged to have been false or misleading, (2) the reasons the statement or action was false, misleading, or deceptive when made, and (3) if an allegation regarding the statement or omission is made on information and belief, all facts on which the belief is formed. *See, e.g.*, *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 992–93 (N.D. Cal. 2024).  The chart should clearly identify which statements or omissions are attributable to which Defendant and include a detailed statement of the facts giving rise to a strong inference that each Defendant acted with scienter.  If the statement was made in written form, Plaintiff should include the statement verbatim.  Plaintiff should also summarize its allegations regarding what each

Defendant knew with regard to the statement or omission, and when they knew it.  The chart should resemble the following:

| Statement or Omission | Maker of the Statement / Individual Who Omitted the Information | Facts Illustrating Falsity (including when the facts were known) | Facts Illustrating Scienter |
|---|---|---|---|
|  |  |  |  |

### CONCLUSION

The Court **ORDERS** as follows:

1. **DENIES** TFA Defendants' Motion to Dismiss under 12(b)(2)

2. **GRANTS** TFA Defendants' Motion to Dismiss under 12(b)(6) and

   a. **DISMISSES** the Section 10b-5 of the Exchange Act claim

   b. **DISMISSES WITH PREJUDICE** the California Corporation Code § 25403 claim

   c. **DISMISSES WITH PREJUDICE** the California Corporation Code § 25216(a) claim

   d. **DISMISSES** the Intentional Misrepresentation claim

   e. **DISMISSES** the Negligent Misrepresentation claim

3. **GRANTS** Defendant Threw's Motion to Dismiss under 12(b)(6) and

   a. **DISMISSES** the Section 10b-5 of the Exchange Act claim

   b. **DISMISSES** the California Corporation Code §§ 25401 and 25501 claim

   c. **DISMISSES** the Intentional Misrepresentation claim

   d. **DISMISSES**  the Negligent Misrepresentation claim

If Plaintiff chooses to file a second amended complaint, Plaintiff **SHALL** file it <u>on or before June 4, 2026.</u>  The second amended complaint may not contain any new causes of action.  *If Plaintiff files a second amended complaint that does not plausibly allege a*

25-cv-01102-TWR (DEB)

*Section 10b-5 claim, the Court will dismiss the claim with prejudice and decline to exercise subject matter jurisdiction over the remaining California law claims.*

Dated:  May 15, 2026

Honorable Todd W. Robinson
United States District Judge

25-cv-01102-TWR (DEB)