UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL COMMUNICATIONS HOLDINGS,<br>Plaintiff,<br>v.<br>TODD THREW; THE FIRM ADVISORS, LLC; JARED OLSON; CORTNEY SELLS; MAYKAYLA KALAGIAS; and DOES 1-10,<br>Defendants. | Case No.: 25-CV-1102 TWR (DEB)<br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br>(ECF Nos. 56, 59) |

Presently before the Court are the Motions to Dismiss Fourth Amended Complaint filed by Defendant Todd Threw ("Threw MTD," ECF No. 56) and TFA Defendants Maykayla Kalagias, Jared Olson, Cortney Sells, and The Firm Advisors, LLC ("TFA") ("TFA MTD," ECF No. 59), both of which are fully briefed. (*See* ECF Nos. 62 ("Threw Opp'n"), 64 ("Threw Reply"), 63 ("TFA Opp'n"), 65 ("TFA Reply"). At the Parties' request, the Court **VACATED** the hearing set for October 22, 2026, and took the Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 67.) Having carefully reviewed the Parties' arguments, Plaintiff Coastal Communications Holdings's ("CCH") Fourth Amended Complaint ("4AC," ECF No. 54), and the law, the Court **GRANTS** the Motions.

## BACKGROUND

### I. Factual Background[1]

Michael Windsor is the sole director and shareholder of CCH. (*See* 4AC ¶ 6.) Plaintiff alleges that Defendant Threw, the former owner of TJT Communications, Inc. (d/b/a Coastal Communications) ("TJTC"), made various misrepresentations in connection with Plaintiff's purchase of TJTC's shares. (*See generally id.*) Plaintiff also alleges that the TFA Defendants, who were the brokers of the sale, participated in the misrepresentations. (*Id.*)

The process of Windsor purchasing the TJTC shares began when Windsor saw an advertisement leading him to a TFA website posting which stated, "*FOR SALE*: Site Planning and Survey Firm: Niche in Telecom with 21 on Staff" and listed facts about TJTC. (*Id.* ¶ 15 (emphasis in original) (citing ECF No. 54-1 ("Summary")).) The Summary also stated:

> 1. **Clients:** 100% telecommunication companies (Verizon, AT&T, Sprint, etc.);
>
> 2. *A 10% down payment of $83,500 returns $125,195 in the first year <u>after</u> debt payments, which is a 149% return on investment!!*;[2]
>
> 3. **Current Owners' Responsibilities**: The owner is active in the business providing oversight and interfacing with the staff and clients;

/ / /

---

[1] For purposes of the Motions, the facts alleged in Plaintiff's Fourth Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] The Fourth Amended Complaint is inconsistent with respect to its description of the Summary's return-on-investment projection. (*See generally* 4AC.) Plaintiff alternates between alleging that the Summary projected a 149% return on investment and a 171% return on investment. (*See id.* ¶¶ 23(B), 77, 88, 98, 104.) For purposes of the Motions, the Court uses the 149% projection contained in the Summary attached as an exhibit to the Fourth Amended Complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that courts need not accept as true allegations that contradict information contained in attached exhibits).

> 4. [T]he owner . . . does feel that the current staff has been trained well enough to handle his responsibilities.

(Summary at 1 (emphasis in original).)

"After reviewing the Summary and other information contained on TFA's website, Windsor responded to a questionnaire on TFA's website, and Sells and Kalagias subsequently set up an initial phone call." (4AC ¶ 19.) "During that initial phone call, Windsor spoke with Sells and Kalagias regarding TJTC's financial health and sought information regarding Threw's reasoning for wanting to sell TJTC." (*Id.*)

"Sells and Kalagias brought Jared Olson onto the team for the TJTC matter when Windsor asked them whether he needed to retain his own attorney." (*Id.* ¶ 30.) "Sells and Olson assured Windsor on multiple occasions that he did not need independent counsel, because TFA's services included legal counsel." (*Id.*)

When Windsor signed an NDA, he received a "Confidential Business Review," (ECF No. 54-2 ("Review")), which had more information about TJTC. (4AC ¶ 25.) The Review repeated certain representations contained in the Summary and additionally stated:

1. TJTC performs "site planning and surveying for the telecom industry with clients such as Verizon, AT&T, Sprint, and Cox Communications;"

2. TJTC employs a team of twenty-one employees, including three project managers;

3. "Coastal Communications," the name of the business, is responsible for generating sales, notwithstanding Threw's good reputation based on years of experience in the industry;

4. Threw's wife's role—handling billing, payroll, and accounting—is not a very active role, perhaps amounting to ten hours per month;

5. Threw's responsibilities could be assumed by other employees at the company;

6. "Notable" clients included AT&T, Cox Communications, Time Warner Cable, Zayo, Vinculums, Mobilitie, Ubiquity, and Extenet;

7. TJTC's recent hiring of new employees was the result of previous employees' moves further from the office and desire to continue working from home.

(Review at 2–10.)

On April 10, 2024, Windsor spoke to Threw, Sells, and Kalagias on a phone call where "Threw, Sells, and Kalagias reiterated the information regarding TJTC's business operations and financial health previously detailed in the Summary and the Review." (4AC ¶ 42.) "Threw also discussed his management style, TJTC's ability to operate without his involvement, and the possibility of someone like Windsor taking over the company." (*Id.* ¶ 44.) Between April 1, 2024, and June 28, 2024, "Sells and Kalagias repeatedly represented to Windsor that they had performed a complete audit of TJTC in order to verify the representations Sells and Kalagias made in the Summary and the Review." (*Id.* ¶ 32.)

"After careful consideration of the Review and multiple conversations with Sells, Kalagias, and Threw, Windsor informed Sells and Kalagias that he was interested in buying TJTC." (*Id.* ¶ 45.) Jared Olson then drafted the documentation used to complete the sale, including the Stock Purchase Agreement. (*See id.* ¶ 52.) "In multiple interactions with Windsor prior to the close of escrow, Threw, Sells, and Kalagias repeatedly reassured Windsor that the representations set forth in the Summary and the Review were accurate, and that TJTC was performing well." (*Id.* ¶ 56.)

Prior to the execution of the Stock Purchase Agreement on June 28, 2024, Windsor received a balance sheet from Threw's wife and a letter from Threw. (*See id.* ¶¶ 59–61.) The balance sheet, (ECF No. 54-3 ("Balance Sheet")), "overstated TJTC's total assets" by over $30,000. (*Id.* ¶ 60.) The letter from Threw, sent June 17, 2024, (ECF No. 54-4 ("June Letter")), set "forth the status of several purportedly signed TJTC projects." (4AC ¶ 61.) Specifically, the June Letter stated:

1. TJTC expected to receive a purchase order from Advantage Engineering AT&T in July 2024, for 17 small cell designs;

2. TJTC expected to receive a purchase order in excess of $200,000 from Crown Castle T-Mobile Small Cell in July 2024, for over 100 designs; and

3. TJTC expected to receive a purchase order in excess of $200,000 from Crown Castle Verizon Small Cell in September 2024, for over 100 designs.

(*Id.* ¶¶ 62(A)–(C).)

> On June 17, 2024, Threw emailed Sells: "I probably need to have a meeting with Michael [Windsor] to share that work has significantly slowed over the past 4 weeks due to it being an election year, interest rates for construction and now the lay offs by one of our biggest clients. . . . Not a good time at the moment."

(*Id.* ¶ 64(a).) "Threw did not share this information with Windsor." (*Id.*) Then, on June 18, 2024, "Threw emailed Nick Patrick, one of TJTC's vendors: 'Boy, it has slowed down for us the past month.'" (*Id.* ¶ 64(b).) Threw also "did not inform Windsor of this business slow down." (*Id.*)

Plaintiff alleges that the Summary, Review, Balance Sheet, and June Letter contained untrue representations. (*Id.* ¶ 68.) He alleges that the following facts demonstrate the falsity of the representations described above:

1. AT&T, Verizon, and Sprint were not clients of TJTC when the Summary was provided to Windsor in April 2024;

2. The 10% down payment of $83,500 would never have been able to yield a $143,115 return. That projection had been based on applying Q1 2024 purchase orders to the rest of the year. TJTC had no basis for doing so;

3. Threw was the primary source of TJTC's business and most purchase orders originated from his personal relationships;

4. Threw had not trained TJTC employees to take over his role as CEO and prevented other project managers from building relationships with Threw's clients;

5. None of the managers Threw had represented were qualified and equipped to be CEO were able to do so;

6. Cox Communications was not a client of TJTC when the Review was published to Windsor in April 2024;

/ / /

7. Nine critical employees listed in the Review had left their TJTC employment by the close of escrow;

8. Management of the billing, payroll, and accounting aspects of TJTC's business constituted a very active role;

9. Cox Communications, AT&T, Time Warner Cable, Zayo, Viniculums, Mobilitie, Ubiquity, and Extenet were not clients of TJTC when the Review was published to Windsor in April 2024;

10. TJTC hired new employees prior to Windsor's acquisition of the company because former employees had resigned due to TJTC's poor culture and compensation;

11. The customer purchase orders referenced in the June Letter did not exist. In August, Windsor learned from Crown Castle that there were no such projects on the horizon. A Crown Castle representative told Windsor that these purchase orders had never been discussed with Threw; and

12. After taking control of TJTC, Windsor did not find any emails or other internal documents confirming the existence of the purchase orders referenced in the June Letter.

(*Id.* ¶¶ 23(A)–(D); 41(A)–(H); 62(A)–(C).) Plaintiff alleges that "Threw, as the founder, owner, and director of TJTC," knew these facts and therefore knew that the statements contained in the Summary, Review, Balance Sheet, and June Letter were false. (*Id.*) Plaintiff also alleges that Sells and Kalagias would have discovered many of these facts if they had "actually conducted an audit to verify the information" in the Summary and the Review. (*Id.*) Accordingly, Sells and Kalagias "either lied about conducting the audit or misrepresented their findings to Windsor." (*Id.*)

"Windsor would not have caused CCH to enter into the Transaction had he known the true state of the TJTC business." (*Id.* ¶ 67.) Plaintiff has allegedly incurred "at least $435,000 in unanticipated expenditures related to the dire state of the TJTC business." (*Id.* ¶ 72.)

/ / /

## II. Procedural History

On April 30, 2025, Plaintiff filed its Complaint, alleging various securities fraud causes of action relating to its purchase of Threw's business, brokered by TFA. (*See* ECF No. 1.) On July 21, 2025, Defendant Threw moved to dismiss for failure to state a claim, (*see* ECF No. 9), and the TFA Defendants moved to dismiss for failure to state a claim and lack of personal jurisdiction on September 2, 2025. (*See* ECF No. 15.) On January 6, 2026, the Court granted in part and denied in part both motions. (ECF No. 24 (the "1st MTD Order").)

On March 12, 2026, Plaintiff filed a First Amended Complaint, (ECF No. 33), and on March 26, 2026, Defendants filed respective motions to dismiss. (ECF Nos. 34, 35.) On May 18, 2026, the Court granted Defendant Threw's motion and granted in part and denied in part the TFA Defendants' motion. (ECF No. 43 (the "2d MTD Order").)

On May 29, 2026, Plaintiff filed a Second Amended Complaint. (ECF No. 44.) Then, after receiving leave from the Court, Plaintiff filed a Third Amended Complaint on July 2, 2026, (ECF No. 49), and the operative Fourth Amended Complaint on August 5, 2026, (ECF No. 54). On August 19, 2026, Defendants filed the instant Motions. (ECF Nos. 56, 59.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Further, under Rule 9(b), when a party alleges fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, the Private Securities Litigation Reform Act ("PSLRA") requires that a complaint alleging federal securities fraud "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). The PSLRA also requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u–4(b)(2)(A).

## ANALYSIS

### I. Plaintiff's Section 10(b) Claim

Plaintiff alleges that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934. (4AC ¶¶ 75–84.) The elements of a federal securities fraud claim under Section 10(b) are "(1) a material misrepresentation or omission[;] (2) scienter, *i.e.*, a wrongful state of mind[;] (3) a connection to the purchase or sale of a security[;] (4) reliance[;] (5) economic loss[;] and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1136 (S.D. Cal. 2008).

/ / /

/ / /

Plaintiff alleges four sources of material misrepresentations or omitted material facts: (1) the Summary, (2) the Review, (3) the Balance Sheet,[3] and (4) the June Letter. (*See* 4AC ¶ 76.)

### *A.* Threw's Motion to Dismiss

Defendant Threw argues that the Court should dismiss Plaintiff's Section 10(b) claim because (1) most of the alleged misrepresentations identified in the Fourth Amended Complaint are not attributable to Threw, (2) the Fourth Amended Complaint does not allege that any of the statements properly attributed to Threw were false at the time they were made, (3) the Fourth Amended Complaint fails to allege scienter with the particularity required by the PSLRA, and (4) the Fourth Amended Complaint does not sufficiently allege loss causation. (*See generally* Threw MTD.) For the reasons below, the Court **GRANTS** Defendant Threw's Motion to Dismiss Plaintiff's Section 10(b) claim against him.

#### *1. Most Alleged Misrepresentations Are Not Attributable to Threw*

Threw first argues that most of the Fourth Amended Complaint's alleged misrepresentations are not actionable against him as a matter of law. (Threw MTD at 4–6.) Plaintiff's Section 10(b) claim is premised on sixteen allegedly false or misleading statements—four in the Summary, eight in the Review, one in the Balance Sheet, and three in the June Letter. (4AC ¶ 76.) Threw contends that he did not "make" nine of these statements and therefore cannot be held responsible for their alleged falsity.[4] (Threw MTD at 4–6.)

---

[3] As a preliminary matter, the Court expresses its disapproval that Plaintiff's Fourth Amended Complaint continues to include allegations relating to the Balance Sheet despite the Court's repeated explanations that the Balance Sheet is not actionable because it was allegedly made by Jeanine Threw, who is not a party to this lawsuit. (*See* 1st MTD Order at 18; 2d MTD Order at 13 n.3.) The Court therefore disregards Plaintiff's allegations as to any representations made in the Balance Sheet.

[4] Threw argues that the only alleged misrepresentations attributable to him are four statements in the Review that use quotation marks to denote his own words and three statements in the June Letter that he personally drafted. (Threw MTD at 8–10.)

"The United States Supreme Court has held that a person can only be held liable under S[ection] 10(b) for false or misleading statements if he . . . is the 'maker of the statement.'" *In Re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006 (N.D. Cal. 2017) (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011)). "[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Janus*, 564 U.S. at 144. A defendant who "merely requested, influenced, helped create, or supplied information for the relevant false or misleading statement[]" is not its maker. *In Re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d at 1007.

Threw is correct that, under *Janus*, he is not the "maker" of most of the alleged misrepresentations contained in the Summary and the Review because he did not have authority to decide "whether and how to communicate" the statements.[5] *See Janus*, 564 U.S. at 144. The Fourth Amended Complaint alleges that the Summary was "prepared by" Defendants Sells and Kalagias and sent to Windsor by TFA's portfolio manager. (4AC ¶¶ 21, 23(A)–(D).) The Fourth Amended Complaint also alleges that Sells and Kalagias drafted the Review, which was "printed on TFA's template" and "included TFA's heading and logo." (*Id.* ¶¶ 27, 41(A)–(H).) These allegations demonstrate that Defendants Sells and Kalagias, rather than Threw, had control over the content included in the materials. Indeed, in its Opposition, Plaintiff appears to concede that most of the statements in the Summary and the Review are not actionable against Threw. (*See* Threw Opp'n at 10–11.) Plaintiff instead argues only that Threw acknowledges that he "made" seven of the alleged misrepresentations and that "[t]hose seven statements therefore must be evaluated on their merits." (*Id.* at 10.) Accordingly, the Court concludes that Threw is not the "maker" of

/ / /

---

[5] Threw concedes that he "made" four statements in the Review. (Threw MTD at 10–11.) These statements are potentially actionable against Threw because, despite being prepared by Sells and Kalagias, they quote Threw's own words. *See Janus*, 564 U.S. at 142–43 ("[I]n the ordinary case, attribution . . . is strong evidence a statement was made by . . . the party to whom it is attributed.").

any statements in the Summary or the four statements in the Review that are not directly attributed to him.

### 2. *The Seven Statements Attributable to Threw Do Not Adequately Allege Falsity*

With respect to the seven statements Threw made, Threw argues that Plaintiff's Section 10(b) claim should be dismissed because none of these statements are adequately pleaded as false. (Threw MTD at 8–10.) These seven alleged misrepresentations can be divided into three categories: (1) three statements describing Threw's opinions about TJTC's operations, (2) one statement concerning TJTC's employee hiring practices, and (3) three statements regarding expected TJTC purchase orders. The Court addresses the sufficiency of the Fourth Amended Complaint's allegations as to each category of statements below.

#### a. Statements Describing Threw's Opinions

Plaintiff alleges that the following three statements in the Review constitute actionable misrepresentations:

1. The name of Threw's business is responsible for generating TJTC's sales, notwithstanding Threw's good reputation in the industry;

2. Threw's wife's role—handling finances—is not a "very active" one, perhaps amounting to ten hours per month; and

3. TJTC's drafting manager, Carlos Gonzalez, would be a "good choice" to take over Threw's role at the company.

(4AC ¶¶ 41(D)–(F).) The Fourth Amended Complaint alleges that the first statement was false because, after taking control of TJTC's operations, Windsor learned that Threw "was the primary source of business" for the company. (*Id.* ¶ 41(D).) The Fourth Amended Complaint alleges that the second statement was false because Threw's wife earned over $20,000 in wages in Q1 of 2024, demonstrating that her role was, in fact, very active. (*Id.* ¶ 41(E).) The Fourth Amended Complaint alleges that the third statement was false

/ / /

because Carlos Gonzalez told Threw that he had health problems that would have prevented him from taking on additional responsibilities at the company. (*Id.* ¶ 41(F).)

To begin, the three alleged misrepresentations in this category constitute opinion statements. The Ninth Circuit has explained that opinion statements are subjective representations that cannot be "objectively verified." *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614 (9th Cir. 2017). Here, whether TJTC's sales were more heavily influenced by the company's reputation or Threw's client relationships is not an objectively verifiable fact. *See id.* Likewise, because one person's perception of what constitutes a "very active" role or a "good candidate" may be different from another person's understanding, these statements are inherently subjective. *See id.*

Where a plaintiff in a securities fraud case alleges that an opinion statement constitutes a material misrepresentation, "the plaintiff must allege both that 'the speaker did not hold the belief []he professed' and that the belief is objectively untrue." *Id.* at 615–16 (citation omitted). Plaintiff fails to do so. The Fourth Amended Complaint includes no allegations—let alone specific facts alleged with particularity—suggesting that Threw did not subjectively hold his stated beliefs regarding TJTC's sales, his wife's role, or Mr. Gonzalez's capabilities. (*See* 4AC ¶¶ 41(D)–(F).)

Plaintiff attempts to defend the sufficiency of its allegations by arguing that Threw's statements "included . . . present factual premise[s]." (Threw Opp'n at 13.) Plaintiff contends that "[a]n opinion may be actionable where the speaker does not actually hold the stated belief . . . **or** where the statement, viewed in context, conveys materially false facts concerning the basis for the opinion." (*Id.* at 11–12 (emphasis added).) Plaintiff is partially correct. In *City of Dearborn*, the Ninth Circuit explained that, "when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff" may plead falsity by alleging "that 'the supporting fact the speaker supplied is untrue.'" 856 F.3d at 616 (citation omitted). But to the extent that Plaintiff seeks to rely on this theory, Plaintiff's argument is unpersuasive. Plaintiff does

not allege that Threw's opinion statements included any accompanying factual representations that were false at the time Threw made the statements. (*See* 4AC ¶¶ 41(D)–(F).) At most, Plaintiff argues that Threw's opinions were misguided or inconsistent with known facts. (*See id.*) These allegations, however, are insufficient regardless of whether Plaintiff relies upon a material misrepresentation theory or an embedded statement of fact theory. *See Barker v. Nextracker Inc.*, 827 F. Supp. 3d 1214, 1225 (N.D. Cal. 2026). Accordingly, Threw's opinion statements cannot serve as the basis for Plaintiff's Section 10(b) claim.

b. Statement Concerning TJTC's Hiring Practices

Plaintiff also alleges that Threw made an actionable misrepresentation when he stated that TJTC decided to hire new employees because former employees "did not want to give up working from home and chose to take a position with less of a commute." (4AC ¶ 41(H).) Plaintiff alleges that this statement was false because Windsor eventually learned that TJTC "had hired new employees . . . because more tenured employees had resigned due to poor company culture and compensation." (*Id.*)

The Fourth Amended Complaint fails sufficiently to allege falsity with respect to Threw's explanation of TJTC's motivation for hiring new employees. Plaintiff's sole basis for alleging that this representation was false is that Windsor eventually discovered another reason why TJTC employees had resigned from the company. (*See* 4AC ¶ 41(H).) But the Fourth Amended Complaint does not allege that former TJTC employees did not, in fact, cite remote-work preferences or commuting concerns as the basis for their resignations. (*See id.*) Plaintiff also does not allege that Threw fabricated the explanation that he gave to Windsor. (*See id.*) Plaintiff argues that "[w]hether Threw's explanation was accurate, and whether multiple factors contributed to the departures, present factual issues that cannot be resolved against" Plaintiff at the pleading stage. (Threw Opp'n at 14.) Plaintiff's position is inconsistent with the pleading standard set forth by the PSLRA. *See* 15 U.S.C. § 78u–4(b)(1)(B). For this statement to constitute an actionable misrepresentation, Plaintiff must allege that Threw's explanation was inaccurate—*i.e.*, that it was false—at

the time it was made. *See id.* Because the Fourth Amended Complaint does not include any such allegation, this statement cannot serve as the basis for Plaintiff's Section 10(b) claim.

c. Statements Regarding Expected Purchase Orders

Finally, Plaintiff alleges that the following three statements in the June Letter describing expected purchase orders are actionable against Threw:

1. TJTC expects to receive a purchase order from Advantage Engineering AT&T in July 2024, for 17 small cell designs;

2. TJTC expects to receive a purchase order in excess of $200,000 from Crown Castle T-Mobile Small Cell in July 2024, for over 100 designs; and

3. TJTC expects to receive a purchase order in excess of $200,000 from Crown Castle Verizon Small Cell in September 2024, for over 100 designs.

(4AC ¶¶ 62(A)–(C).) Plaintiff alleges that these statements are actionable as false representations because (1) the expected purchase orders never materialized; (2) Windsor discovered no emails, documents, or communications relating to the purchase orders after he took control of TJTC; and (3) a representative at Crown Castle told Windsor that "no such purchase order had even been discussed with Threw." (*See id.*)

A securities fraud plaintiff cannot adequately allege falsity with respect to a forward-looking projection merely by alleging that the projection did not materialize. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010.) A plaintiff may, however, allege falsity by pleading that a defendant "lacked . . . a reasonable basis" for the projection at the time it was made. *See id.* Here, the Fourth Amended Complaint does not sufficiently plead that Threw had no reasonable basis for making the statements contained in the June Letter. (*See* 4AC ¶¶ 62(A)–(C).) First, Plaintiff's absence of documentation theory is unpersuasive. (*See id.*) Under the PSLRA's "exacting requirements for pleading falsity," a plaintiff must affirmatively "identify 'specific contemporaneous statements or conditions that demonstrate'" why the alleged misrepresentation was untrue at the time it was made. *Rieckborn v. Jeffries LLC*, 81 F. Supp. 3d 902, 927 (N.D. Cal. 2015) (citation omitted).

Plaintiff therefore cannot satisfy this demanding standard merely by pointing to the absence of corroborating evidence. *See id.* Additionally, even accepting the truth of the Fourth Amended Complaint's allegations, the fact that Windsor did not find any written documents relating to the purchase orders, (*see* 4AC ¶¶ 62(A)–(C)), does not necessarily suggest that Threw had no reasonable basis—*e.g.*, verbal communications—for believing that the orders were forthcoming.

Second, the Fourth Amended Complaint's allegations describing Windsor's communication with a Crown Castle representative are not alleged with sufficient particularity to support a finding of falsity. The Ninth Circuit has explained that a complaint may only rely on statements from confidential witnesses to establish falsity where the witnesses are "described with sufficient particularity to establish their reliability and personal knowledge."[6] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). The complaint must "provide[] sufficient detail about a confidential witness' position . . . to provide a basis for attributing the facts reported by that witness to the witness' personal knowledge." *Id.* The Fourth Amended Complaint does not include sufficiently detailed allegations to provide such a basis. (*See* 4AC ¶ 62(B).) Plaintiff alleges only that Windsor "learned from the client representative at Crown Castle, Jesse A., that [the] purchase order never existed." (*Id.*) The Fourth Amended Complaint does not, however, provide any additional details describing Jesse A.'s role at Crown Castle, the duration of his employment, his job responsibilities, or the basis for his personal knowledge regarding conversations Threw may have had with Crown Castle prior to June 2024. (*See id.*) Accordingly, the Court cannot rely on Jesse A.'s statements to conclude that Threw's representations in the June Letter were false at the time they were made. *See Zucco*, 552

---

[6] The Fourth Amended Complaint identifies the Crown Castle employee as "Jesse A." (4AC ¶ 62(B).) The PSLRA's standard regarding the details that must be alleged when relying on a confidential witness does not change where the complaint identifies the witness by name. *See Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1211 (S.D. Cal. 2005). In either case, the critical question is whether the witness is described with sufficient particularity to establish his or her personal knowledge. *See id.*

F.3d at 996 (concluding that a confidential witness's personal knowledge was not alleged with sufficient particularity even where the witness's job description and responsibilities were outlined); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1162–63 (S.D. Cal. 2008) (deciding not to rely on statements from a confidential witness where the witness's job description was "too vague for the Court to discern whether the confidential witness likely [knew] what he/she [was] talking about").

For the reasons above, the Court concludes that Plaintiff has not adequately pleaded falsity with respect to any of the seven statements attributable to Threw. Although this is sufficient to grant Defendant Threw's Motion to Dismiss Plaintiff's Section 10(b) claim, the Court will also address Threw's remaining arguments that Plaintiff fails to allege scienter or loss causation.

*3. Plaintiff Fails to Allege Scienter*

Threw also argues that Plaintiff fails to state a Section 10(b) claim because the Fourth Amended Complaint does not allege scienter with the particularity required by the PSLRA. (Threw MTD at 10–12.) Threw contends that "Plaintiff's scienter theory is entirely derivative of its falsity theory" and therefore fails for the same set of reasons. (*Id.* at 10.)

The PSLRA requires that a securities fraud complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Court must consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003). "The PSLRA's 'strong inference' requirement has teeth. It is an 'exacting' pleading obligation that 'presents no small hurdle for the securities fraud plaintiff.'" *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (citations omitted) (cleaned up). Under this standard, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent

intent. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). "[T]he Ninth Circuit often treats the falsity and scienter analyses as 'a single inquiry, because falsity and scienter are generally inferred from the same set of facts.'" *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1077 (C.D. Cal. 2012) (citation omitted)

Here, the Fourth Amended Complaint's allegations regarding scienter are insufficient because they rely on the alleged falsity of the seven statements addressed above. The Fourth Amended Complaint repeatedly alleges that scienter can be inferred because "Threw, as the founder, owner, and director of TJTC[,]" knew "all the relevant information about TJTC's operations," including whether the purchase orders at issue were actually on the horizon. (*See* 4AC ¶¶ 41(A)–(H), 62(A)–(C).) In other words, Plaintiff's theory is that Threw must have known that the alleged representations were false based on his role at TJTC. (*See id.*) The Fourth Amended Complaint alleges that, as a result, when Threw made those statements with knowledge of their falsity, he acted with "deliberate or conscious recklessness." *See Joint Council Pension Tr. Fund*, 320 F.3d at 938. But, as explained above, *see infra* Section I.A.2, the Fourth Amended Complaint's allegations do not establish the falsity of any of Threw's representations. Accordingly, the Court cannot draw a strong inference of scienter based on these allegations. *See DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1233 (S.D. Cal. 2001) ("Plaintiffs' remaining scienter allegations fail because they rely explicitly on the allegedly false or misleading statements discussed above."); *see also Peters v. Colony Credit Real Est., Inc.*, No. CV-20-8305-PSG-PVCX, 2021 WL 4813762, at *7 (C.D. Cal. June 7, 2021) ("Without additional facts showing falsity, the scienter argument necessarily fails as well.").

*4. Plaintiff Fails to Allege Loss Causation*

Threw also argues that the Fourth Amended Complaint does not allege the element of loss causation with sufficient particularity. (Threw MTD at 15.) Threw therefore contends that, even if the Court were to conclude that the Fourth Amended Complaint

/ / /

/ / /

adequately alleges falsity and scienter, this deficiency provides an independent basis for dismissing Plaintiff's Section 10(b) claim. (*Id.*)

To plead loss causation, a plaintiff must allege that "the defendant's misrepresentation was a 'substantial cause' of his or her financial loss." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (citation omitted). "[T]he ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). Like the other elements of a Section 10(b) claim, "loss causation must be pleaded with particularity under Rule 9(b)." *In re Bofi Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPCKSC, 2018 WL 11306911, at *3 (S.D. Cal. Mar. 15, 2018).

The Fourth Amended Complaint does not adequately plead loss causation. To defend the sufficiency of the Fourth Amended Complaint's allegations, Plaintiff emphasizes that this case—which arises from a private securities transaction—is not a traditional "fraud-on-the-market" claim where a securities fraud plaintiff can point to fluctuations in publicly traded stock to establish loss causation.[7] (Threw Opp'n at 19.) Plaintiff therefore argues that the Fourth Amended Complaint adequately pleads loss causation by alleging that Windsor "acquired TJTC at a price based materially on" Threw's misrepresentations and that Plaintiff "incurred substantial unanticipated expenditures" after discovering that Threw's representations had been false. (*Id.* at 19–20.)

Plaintiff's argument is inconsistent with the law. As a preliminary matter, the United States Supreme Court has held that a plaintiff cannot adequately plead loss causation by alleging only that they purchased stock at a price that was artificially inflated by a defendant's misrepresentations. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342

---

[7] "Typically, to establish loss causation, a plaintiff must show that the defendants' alleged misstatements artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined. Courts refer to this theory as 'fraud-on-the-market.'" *Irving*, 998 F.3d at 407 (cleaned up) (citation omitted).

(2005). This principle has been consistently applied by courts in this circuit, including in cases involving the sale of private securities. *See Lifevoxel Va. SPV, LLC v. Lifevoxel.AI, Inc.*, No. 25-613, 2026 WL 2255446, at *2 (9th Cir. Aug. 5, 2026) (holding, in a private securities fraud case, that "[p]urchasing a security at an inflated price—that is to say, paying more for the security than they would have had they known the truth—is insufficient" to establish loss causation); *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 411 F. Supp. 2d 1172, 1175 (N.D. Cal. 2005).

Additionally, Plaintiff cannot avoid Rule 9(b)'s particularity requirement by invoking the private nature of the transaction at issue in this case. In *Irving*, the Ninth Circuit explained that, "[e]ven in a privately traded securities case . . . [a] plaintiff is not relieved of the burden of showing 'the necessary link between the claimed misrepresentations and the economic loss [it] suffered." 998 F.3d at 409–10 (citation omitted). In fact, the court explained, "showing loss causation for privately traded securities requires plaintiffs to 'carry the *greater* burden of proving the causal links that an efficient secondary market establishes automatically.'" *Id.* (citation omitted) (emphasis in original). The court ultimately held that the plaintiff had failed adequately to allege loss causation where the plaintiff "fail[ed] to plead with particularity and distinguish among the various misstatements and revelations" at issue. *Id.* at 409.

Here, the Fourth Amended Complaint suffers from the same deficiency. (*See* 4AC ¶¶ 72–74.) Plaintiff alleges that its losses "resulted from" the totality of Threw's alleged misrepresentations. (*Id.*) Plaintiff does not, however, connect any specific misrepresentation to any specific economic loss. (*See id.*) Accordingly, the Fourth Amended Complaint's undifferentiated allegations regarding the cumulative effect of Threw's alleged misrepresentations are insufficient to satisfy Rule 9(b)'s standard. *See Brady v. Delta Energy & Commc'ns, Inc.*, No. 5:21-CV-01843-FWS-SHK, 2023 WL 2683203, at *9 (C.D. Cal. Jan. 25, 2023) (holding that a plaintiff failed to allege loss causation with particularity where the complaint did "not differentiate between" the alleged misrepresentations).

For the reasons explained above, the Court **GRANTS** Defendant Threw's Motion and **DISMISSES** Plaintiff's Section 10(b) claim against him for failure to allege falsity, scienter, or loss causation with the particularity required by the PSLRA.

***B. TFA Defendants' Motion to Dismiss***

The TFA Defendants argue that Plaintiff fails to state a Section 10(b) claim because the Fourth Amended Complaint does not allege (1) Defendant Olson "made" any of the misrepresentations at issue, (2) scienter with the particularity required by the PSLRA, and (3) any of the statements attributed to Defendants Sells and Kalagias were false at the time they were made. (*See* TFA MTD at 5–21.)

*1. Defendant Olson Did Not "Make" Any Alleged Misrepresentations*

As a preliminary matter, the TFA Defendants argue that Plaintiff's Section 10(b) claim should be dismissed as to Defendant Jared Olson because the Fourth Amended Complaint does not allege that Olson "made" any misrepresentations. (TFA MTD at 5–8.) Plaintiff does not appear to contest this argument. (*See* TFA Opp'n at 22–23.)

As explained above, *see supra* Section I.A.1, a defendant may only be held liable for securities fraud under Section 10(b) if he is the "maker" of a false or misleading statement. *See Janus*, 564 U.S. at 144. Here, Plaintiff concedes that Olson did not "make" any of the allegedly false or misleading statements contained in the Summary, Review, or June Letter. (TFA Opp'n at 22–23.) The Fourth Amended Complaint expressly states that "Plaintiff does not presently allege, except to the extent supported by further discovery, that Olson personally made the specific . . . representations attributed elsewhere to Threw, Sells, or Kalagias." (4AC ¶ 71.) Plaintiff also acknowledges in its Opposition that, "[u]nder *Janus*, Olson cannot be held liable under Rule 10b-5(b) for another person's statement merely because he participated in the transaction." (TFA Opp'n at 22.) Because the Fourth Amended Complaint does not allege that Olson was the "maker" of any allegedly false or misleading statements, the Court **GRANTS** the TFA Defendants' Motion and **DISMISSES** Plaintiff's Section 10(b) claim against Defendant Olson.

*2. Plaintiff Fails to Allege Scienter*

The remaining TFA Defendants argue that Plaintiff's Section 10(b) claim should be dismissed because the Fourth Amended Complaint suffers from the same fatal flaw as Plaintiff's prior complaints: failure to allege scienter with the particularity required under the PSLRA. (TFA MTD at 9–11.)

As explained above, *see infra* Section I.A.3, the standard for alleging scienter under the PSLRA is "exacting" and requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See Nguyen*, 962 F.3d at 414; *see also* 15 U.S.C. § 78u–4(b)(2). Under this standard, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *See Tellabs*, 551 U.S. at 324.

Plaintiff's core theory is that scienter may appropriately be inferred against the TFA Defendants based on statements that Sells and Kalagias allegedly made to Windsor prior to his acquisition of TJTC. (*See* TFA Opp'n at 15–17.) Specifically, the Fourth Amended Complaint alleges that Sells and Kalagias repeatedly told Windsor that they had "verified the representations" contained in the Summary and the Review. (4AC ¶¶ 39, 41(C), 76.) Plaintiff alleges that, "[h]ad Sells and Kalagias actually conducted an audit of TJTC's books," they would have discovered that certain details in the Summary and the Review were not accurate. (*See id.* ¶¶ 23(A)–(B), 23(D).) Plaintiff alleges that Sells and Kalagias therefore "either lied about conducting the audit or misrepresented their findings." (*Id.*) Plaintiff argues that, in either case, Sells and Kalagias's conduct demonstrates deliberate or conscious recklessness. (TFA Opp'n at 17.) The Fourth Amended Complaint then repeats this same allegation with respect to every alleged misrepresentation in the Summary and the Review to demonstrate scienter against the TFA Defendants. (*See generally* 4AC.)

Plaintiff's allegations are insufficient to satisfy the PSLRA's demanding standard. The Court starts with Plaintiff's theory that the TFA Defendants may have misrepresented

their findings after conducting an audit of TJTC. (*See id.* ¶¶ 23(A)–(D), 41(A)–(H), 76.) Plaintiff emphasizes that the Fourth Amended Complaint does more than allege that Sells and Kalagias "should have known" that information in the Summary and the Review was inaccurate.[8] (TFA Opp'n at 15–17.) Instead, Plaintiff contends that the Fourth Amended Complaint alleges that the audit purportedly conducted by the TFA Defendants "would have" revealed the falsity of certain representations. (*Id.*) This distinction is immaterial. The Ninth Circuit has held that allegations similar to those in the Fourth Amended Complaint are insufficient to "give rise to a strong inference" of scienter. *See DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002). In *DSAM*, the plaintiff alleged that, after conducting an audit, an accounting firm certified financial information that was eventually revealed to be false. *Id.* at 389. The plaintiff argued that the firm therefore "must have consciously disregarded the [financial information's falsity] because it had access to the documents that revealed [the falsity] at the very time it conducted the original audit." *Id.* at 390. The court disagreed, holding that the plaintiff's allegations did "not strongly compel an inference of intentional or deliberately reckless conduct as opposed to ordinary carelessness." *Id.*

Likewise, here, the Fourth Amended Complaint merely alleges that Sells and Kalagias had access to information that would have revealed the falsity of certain representations in the Summary and the Review. (*See* 4AC ¶¶ 23(A)–(D), 41(A)–(H).) But Plaintiff does not allege that Sells or Kalagias actually discovered that any statements in those materials were false, nor does the Fourth Amended Complaint describe a single document that Sells or Kalagias ever personally reviewed. (*See generally id.*) Absent any such particularized factual allegations that could support an inference of deliberate or

---

[8] Plaintiff concedes that, as the Court explained in its Second Motion to Dismiss Order, allegations that a defendant "should have known something do[] not rise to deliberate or conscious recklessness." (TFA Opp'n at 15 (citing 2d MTD Order at 20 (citing *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("At most, it creates the inference that he *should* have known of the violations. This is not sufficient to meet the stringent scienter pleading requirements of the PSLRA." (emphasis in original)))).

conscious recklessness, Plaintiff cannot satisfy the PSLRA's pleading standard by relying solely on Sells and Kalagias's "verification" of allegedly misleading representations.

Plaintiff's alternative theory—that the TFA Defendants may have lied about conducting the audit in the first place—fares no better. The Fourth Amended Complaint does not allege any specific facts to support its theory that Sells and Kalagias never performed the audit in question. (*See generally* 4AC.) Plaintiff's sole basis for making this allegation is that Sells and Kalagias having lied about their review is one of "two factual possibilities" that would explain why they "verified" several allegedly false statements. (TFA Opp'n at 16.) The PSLRA is clear, however, that a plaintiff must state factual allegations regarding scienter with particularity. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Plaintiff's conclusory allegations that the TFA Defendants *may* have lied about conducting a review is not at least as compelling as the inference they did not, *see Tellabs*, 551 U.S. at 324, and therefore falls significantly short of this heightened standard.

Because Plaintiff's allegations supporting an inference of scienter are not pleaded with sufficient particularity as required under the PSLRA, the Court **GRANTS** the TFA Defendants' Motion and **DISMISSES** Plaintiff's Section 10(b) claim against the remaining TFA Defendants.

## II. Plaintiff's Remaining State Law Claims and Leave to Amend

In addition to its Section 10(b) claim, Plaintiff re-alleges claims under California state law for negligent and intentional misrepresentation against Defendants Threw, Kalagias, Sells, and TFA. (4AC ¶¶ 95–107.) Against Defendant Threw, Plaintiff also re-alleges its securities fraud claim under California Corporations Code Sections 25401 and 25501. (*Id.* ¶¶ 85–94.) All Defendants move to dismiss Plaintiff's remaining state law claims. (Threw MTD at 15–16; TFA MTD at 21–25.)

All Defendants further request that the Court dismiss Plaintiff's federal and state law claims with prejudice because Plaintiff has had four opportunities to state a claim and has

/ / /

failed to do so. (Threw MTD at 17; TFA MTD at 25.) Plaintiff seeks leave to amend if the Court dismisses any of its claims. (Threw Opp'n at 23–24; TFA Opp'n at 26–27.)

In its Second Motion to Dismiss Order, the Court explained that "*[i]f Plaintiff files a second amended complaint that does not plausibly allege a Section 10b-5 claim, the Court will dismiss the claim with prejudice and decline to exercise subject matter jurisdiction over the remaining California law claims*."[9] (2d MTD Order at 26–27 (emphasis in original).) Having afforded Plaintiff four opportunities sufficiently to state a federal securities fraud claim, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Section 10(b) claim. *See Zucco*, 552 F.3d at 1007 (holding that denying leave to amend is appropriate in a federal securities fraud case where a plaintiff has repeatedly failed "to cure deficiencies by amendments previously allowed"). Additionally, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to its Second Motion to Dismiss Order and 28 U.S.C. Section 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Threw's (ECF No. 56) and the TFA Defendants' (ECF No. 59) Motions to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's Section 10(b) claim. Having dismissed Plaintiff's sole federal claim, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the Court **DISMISSES** those claims **WITHOUT PREJUDICE** to

/ / /

/ / /

/ / /

/ / /

/ / /

---

[9] In its Opposition to the TFA Defendants' Motion, Plaintiff states, "should the Court decide that [Plaintiff] cannot state a federal Section 10b-5 claim against any of the TFA Defendants, [Plaintiff] respectfully requests that the Court dismiss only that claim and 'decline to exercise subject[] matter jurisdiction over the remaining state law claims.'" (TFA Opp'n at 6.)

Plaintiff pursuing them in the appropriate forum and **ORDERS** the Clerk of the Court to close this case.[10]

**IT IS SO ORDERED.**

Dated: November 4, 2026

Honorable Todd W. Robinson
United States District Court

---

[10] Although the Court's dismissal of Plaintiff's state law claims is **WITHOUT PREJUDICE**, the Court questions whether Plaintiff would be able to comply with California Code of Civil Procedure § 128.7 given its repeated inability sufficiently to plead any actionable misrepresentations in this Court.